# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WILLIAM T. DIVANE, JR., KENNETH J. BAUWENS, MICHAEL J. CADDIGAN, LARRY CRAWLEY, SAMUEL EVANS, TIM FOLEY, THOMAS C. HALPERIN, DANIEL MEYER, KEVIN O'SHEA, MICHAEL L. WALSDORF, the Electrical Insurance Trustees, <br><br> Plaintiffs, <br><br> v. <br><br> BEST NEON SIGN CO., <br><br> Defendant. | No. 08 C 722 <br> Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, the Electrical Insurance Trustees (the "Trustees"), are the group responsible for administering various fringe-benefit funds which are related to a collective-bargaining agreement ("Sign Agreement") entered into between Defendant Best Neon and Local 134, International Brotherhood of Electrical Workers. Defendant Best Neon is an Illinois corporation and manufacturer of custom signage. Under the Sign Agreement, Best Neon agreed to pay certain wage rates and, in addition, to file a monthly report with and make a monthly contribution to the Trustees to cover certain fringe benefits. In September 2006, the Trustees audited Best Neon's fringe benefit contributions for 2004 and 2005. On March 19, 2007, the Trustees sent Best Neon a copy of the auditor's purported findings and demanded $189,726.67 for alleged unpaid contributions, liquidated damages, and the audit fee.

Best Neon took exception with some of the audit's findings and questioned the inclusion of non-union members in the audit. On April 9, 2007, a representative of Best Neon notified the

Trustees that Best Neon disputed the audit findings. On April 30, Best Neon sent the Trustees a letter detailing its disputes with the audit findings, including attached affidavits from several Best Neon employees. Specifically, Best Neon disputed the inclusion of several employees in the audit, some of whom were no longer employed by Best Neon, because those employees performed no electrical work during 2004 and 2005.

On May 2, 2007, the Trustees faxed Best Neon a revised audit report along with a new demand letter seeking $4,236.70 for alleged unpaid contributions and liquidated damages. Shortly after sending the fax, Michael Krantz, the Trustees' Collection Manager, called Best Neon and told Rosemary Sneed-Sanders, Best Neon's office manager, to disregard the May 2, 2007 demand letter he had just faxed over because the fund office had some inconsistent and conflicting information regarding the work performed by Best Neon's employees.[1]

On May 15, 2007, Best Neon sent the Trustees a check for $4,236.70 and an accompanying letter stating that the check was "presented in good faith to fully accord and satisfy any disputes related to the company's obligation to pay into the funds during the years 2004 and 2005." The letter additionally stated that by cashing the check, the Trustees were "agreeing that Best Neon has fulfilled its obligations to the funds for the above-mentioned years and that this matter is hereby resolved." The check and letter were sent to the Trustees' lock box administered by the Northern Trust. A copy of the letter was sent to Michael Kranz. The check was cashed.

---

[1] Sneed-Sanders testified that she believes the revised demand letter was sent by mail, as opposed to fax. The exact nature and content of her communication with Kranz is also in dispute. Sneed-Sanders remembers that Kranz' instructions to disregard were in relation to the original audit and not the revised demand. However, for purposes of Best Neon's motion for summary judgment, Best Neon concedes that the evidence most favorable to the Trustees is that Kranz withdrew the May 2, 2007 demand and informed Best Neon to disregard it.

On May 30, 2007, counsel for the Trustees sent a letter to Best Neon's representative stating the prior demand had been withdrawn and "[t]here is no accord and satisfaction." The proceeds from the cashed check were never returned to Best Neon; rather, on January 9, 2008, the Trustees sent Best Neon a letter acknowledging that Best Neon had been credited $4,233.70. The Trustees further demanded payment of an additional $185,489.97. On January 14, 2008, a representative of Best Neon sent a letter to counsel for the Trustees, again disputing the audit findings and alleging the matter had been previously resolved.

In February 2008, the Trustees filed a lawsuit pursuant to the Labor-Management Relations Act, 29 U.S.C. §§ 141 - 187, and the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, to recover $189,726.67 plus attorneys' fees and costs. Best Neon now moves for summary judgment on the basis that the parties have reached an accord and satisfaction, thereby releasing Best Neon from the obligation to pay the funds any further amount for the years 2004 through 2005. In the alternative, Best Neon moves for partial summary judgment because no evidence suggests that 16 of the 18 employees included in the audit were performing bargaining unit work during the time period covered by the audit.

## I. STANDARD OF REVIEW

Summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits" indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

3

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56 (e)(2); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citation omitted). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.,* 233 F.3d 432, 437 (7th Cir.2000). I consider the record in the light most favorable to the non-moving party, and draw all reasonable inferences in the non-movant's favor. *Lesch v. Crown Cork & Seal Co.,* 282 F.3d 467, 471 (7th Cir.2002).

## II. DISCUSSION

An accord and satisfaction is a contractual method of discharging a debt or a claim. *Saichek v. Lupa*, 787 N.E. 2d 827, 832 (Ill. 2003). Under both Illinois law and the relevant provisions of the UCC, an accord and satisfaction occurs when the "person against whom a claim is asserted proves that (I) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (ii) the amount of the claim was unliquidated or subject to a bona fide dispute, and (iii) the claimant obtained payment of the instrument. 810 Ill. Comp. Stat. 5/3-311 (2008). Additionally, section 5/3-311(b) requires "that the instrument or an accompanying written communication contain[ ] a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim."

Best Neon's tendered check and accompanying letter facially meet these criteria. The amount Best Neon owed to the Trustees was subject to a "bona fide dispute" (at all times Best Neon maintained that its non-union employees should not have been included in the audit), the

4

instrument and accompanying letter sent by Best Neon contained highly "conspicuous statement[s]" that the check was tendered as full satisfaction for the Trustees' claim for benefit contributions for 2004 through 2005, and the Trustees "obtained payment of the instrument" by negotiating the check.[2]

The Trustees attempt to argue that the funds tendered by Best Neon "have not been allocated," but they fail to explain the significance of this argument. The issue is whether the Trustees "obtained payment," and clearly they have. In addition, the argument that the funds "have not been allocated" is inconsistent with the Trustees' January 9, 2008 letter, which indicated that Best Neon had been credited for the $4,236.70 amount.

The Trustees further argue that a material question of fact exists as to whether Best Neon acted in "good faith" when it tendered its payment to the Trustees because the May 2, 2007 revised demand was withdrawn by Krantz later that same day. The UCC comment provides that "good faith" implies "not only honesty in fact, but the observance of reasonable commercial standards of

---

[2] Paragraph (c) of section 5/3-311 provides for two exceptions to the basic requirements for an accord and satisfaction which are designed to avoid inadvertent satisfaction of debts, especially when a tender is sent to a large company. An otherwise valid tender to a claimant "organization" fails if "(I) within reasonable time before the tender, the claimant sent a conspicuous statement to the person against whom the claim is asserted that communications concerning disputed debts, including an instrument tendered as full satisfaction of a debt, are to be sent to a designated person, office, or place, and (ii) the instrument or accompanying communication was not received by that designated person, office, or place." § 3-311(c)(1). In addition, a claim will not be discharged if the claimant, whether or not an organization, "proves that within 90 days after payment of the instrument, the claimant tendered repayment of the amount of the instrument to the person against whom the claim is asserted." § 3-311(c)(2).
  However, the Trustees do not and cannot argue that either of these exceptions apply. There is no evidence that the Trustees provided any other address than the address used by Best Neon to tender payment, nor was the payment refunded within 90 days. The Trustees do seem to make an issue of the fact that Northern Trust processed the check before the Trustees became aware that it was tendered in full satisfaction of the claim. However, if the acceptance of the check was inadvertent, the Trustees could have avoided the discharge of their claim by refunding the amount in accordance with subsection 3-311(c)(2).

fair dealing. The meaning of 'fair dealing' will depend upon the facts in the particular case."
U.C.C. § 3-311, cmt. ¶ 4. "Ordinarily the good faith requirement is violated where there is no bona fide mutual dispute concerning consideration, or the party tendering the payment affirmatively misleads the claimant." *IFC Credit Corp. v. Bulk Petroleum Corp.*, 403 F.3d 869, 874 (7th Cir. 2005) (citing *McMahon Food Corp. v. Burger Dairy Co.*, 103 F.3d 1307, 1313 (7th Cir. 1996) (holding there was no good faith where debtor induces acceptance of payment by falsely leading creditor's agent to believe that creditor agreed to the terms of the payment)). Here, there is no question that there was (and still is) a bona fide dispute over the amount in question. In addition, there has been no misrepresentation or proactive deception on behalf of Best Neon. Best Neon included in the letter accompanying the check that the payment was being submitted as a complete accord and satisfaction, and Best Neon forwarded a copy of the letter directly to Krantz, the Trustees' Collection Manager who himself had withdrawn the revised demand. The amount of the payment was the exact amount calculated by the auditors when non-union employees were excluded from the audit. On the basis of these facts, I conclude that a reasonable finder of fact could not conclude that Best Neon lacked good faith when it tendered its payment.

In any event, the Trustees continue to retain the money sent to them by Best Neon and on the basis of this consideration alone the Trustees' claim must fail. "[W]here there is a bona fide dispute as to the amount due, retention of a tender conspicuously identified as an accord and satisfaction effectively dooms a claimant's case." *IFC Credit Corp.*, 403 F.3d at 874 (citing *In re Cunningham's Estate*, 142 N.E. 740, 742 (Ill. 1924); *Bankers Leasing Ass'n v. Pranno*, 681 N.E. 2d 28, 34 (Ill. App. Ct. 1997); *Quaintance Assoc., Inc. v. PLM, Inc.*, 420 N.E. 2d 567, 569-70 (Ill. App. Ct. 1981)). In both *IFC Credit Corp.* and *Pranno*, the creditors, with full knowledge of the dispute as to the amount of the debt, promptly cashed the check and, as was done here, attempted

6

to characterize the transaction as only partial satisfaction of outstanding debts. Both of those courts rejected that characterization and held that a valid accord and satisfaction had occurred. *IFC Credit Corp.*, 403 F.3d at 875; *Pranno*, 681 N.E. 2d at 34 ("it makes no difference that the creditor protests that he does not accept the amount in full satisfaction. The creditor must either accept the payment with the condition or refuse."). Accordingly, I reach the same result here and grant Best Neon's motion for summary judgment on the basis that an accord and satisfaction was reached.

As a result of my findings above, I need not and do not reach Best Neon's alternative argument as to the validity of the audit findings. For the same reason, I do not address Best Neon's motion to strike certain denials made by the Trustees to Defendant's statement of uncontested facts, specifically paragraphs 37 through 45, because those paragraphs deal with the issue presented in Best Neon's alternative argument. The same is true with respect to Best Neon's motion to strike attached exhibit C to the affidavit of Michael Krantz on the basis that the forms included therein are inadmissible hearsay (the forms relate to the alternative argument and I need not address Best Neon's motion to strike the exhibit from the record).

ENTER:

James B. Zagel
United States District Judge

DATE: April 20, 2009